GANSEVOORT BANK v. EMPIRE STATE SURETY CO.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

GUARANTY—DISCHARGE OF GUARANTOR—ALTERATION OF TERMS OF GUARANTY.

A bank, on the offer of a note for discount, demanding security, a surety company executed an undertaking to pay such part of the debt as the maker of the note did not, whereupon the amount of the note, less the discount, was placed to the maker's credit. Immediately the bank demanded of the maker that he give it his check for a part of the loan to insure a balance of that amount remaining with it, which the maker did, though protesting, thereby reducing the amount available to his use. The bank also required a check to be drawn to its attorney for a comparatively large sum for services in supervising the loan. *Held,* that there was no variance from the terms of the guaranty, releasing the surety company.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Guaranty, §§ 64–68.]

Patterson, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by the Gansevoort Bank against the Empire State Surety Company. Judgment for plaintiff, and defendant appeals. Affirmed. See 102 N. Y. Supp. 544.

Argued before PATTERSON, P. J., and McLAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Benjamin Reass, for appellant.
J. Campbell Thompson, for respondent.

HOUGHTON, J.   One Randolph M. Newman applied to the plaintiff for the discount of his note for $5,000, and, the plaintiff demanding additional security, this defendant executed an undertaking conditioned that if such discount was made it would pay such part of the indebtedness as Newman failed to discharge.   Newman presented his note, with the defendant's undertaking, to plaintiff, and the $5,000, less the discount, was placed to his credit.   Immediately upon this being done, the plaintiff insisted that Newman give to it his check for $1,500, in order to insure a balance of that amount remaining on deposit with it.   Newman protested against this, saying he wished to draw upon the whole amount; but plaintiff insisted that he should not, and certified his check, thus preventing him from drawing against his discount beyond $3,500.   In addition to this action on the part of plaintiff, Newman was told he must draw his check to the plaintiff's attorney for a comparatively large sum for services in supervising the loan.   The note not having been paid, plaintiff credits the $1,500, and brings action against the defendant for the balance.   The defendant interposed the defense that by its undertaking it was agreed that Newman should have a discount of $5,000 available for his use, and that by the act of plaintiff he was only permitted to have a discount of $3,500, and hence there was a variance of the terms of guaranty, which released defendant from its bond.

It is true that the discounting of the note and the demanding and certifying of the check for $1,500 was all done at practically the same time.   Nevertheless the plaintiff did discount Newman's note for $5,000, and opened an account with him, and credited that amount to him, less the discount of the note.   Having this amount to his credit in plaintiff's bank, plaintiff demanded that the $1,500 check be given.   Although protesting that it was wrong, still Newman voluntarily gave it, as well as the check to plaintiff's attorney.   So far as the legal aspect is concerned, Newman's note for $5,000 was discounted and all of the money put to his credit.   That he at the same time, or subsequently, voluntarily chose to draw checks against it in favor of plaintiff, or any body else, in our view, does not change the legal liability of the defendant.   The situation discloses some quite extraordinary banking operations on the part of plaintiff, but we find nothing which releases the defendant from its legal obligation.

It follows, therefore, that the judgment in favor of plaintiff must be affirmed.

Judgment affirmed, with costs.

McLAUGHLIN, SCOTT, and LAMBERT, JJ., concur.

PATTERSON, P. J. (dissenting).   I cannot concur in the affirmance of this judgment.   It is very plain, I think, that the surety was discharged by an alteration in the terms of the agreement between the bank and the borrower of the money.   The surety became responsible for the performance of the particular contract mentioned in the bond, and only for the repayment of a loan to be made by the bank to Newman of $5,000 upon his promissory note payable

four months after date. This bond was given after an arrangement had been made between the bank and Newman by which the bank undertook to make a loan of $5,000, upon being furnished with a bond of some surety company. That contemplated the actual advance of the full sum, and there can be no doubt of that fact; for the vice president of the bank so states in his testimony. He says that Newman agreed to that, and brought back to the bank the bond upon which this action is founded. After that was done, and the bond was furnished and presented to the bank, an entirely different arrangement was made—not to put the borrower in possession of the full sum of $5,000, but, as the vice president testifies:

"When he [Newman] brought this bond to the bank, I did not at once give him the money or anything. We made certain conditions upon which the loan would be put through. They were that he should carry with us a proportionate balance. He asked what balance would be required. I stated $1,500. He agreed to do so, and give us his check, in order that the balance might be assured us."

This witness also testifies that this $1,500 was placed in such a position that Newman never could draw it or use it, and thus there was a conditional and new arrangement made by which Newman was to receive only $3,500, instead of $5,000. The shallow device by which this was effected and sought to be made the equivalent of a loan of the full sum cannot alter the real situation. It is entirely immaterial whether this change in the terms of the contract was injurious or beneficial to the surety. As was said in the case of Walrath v. Thompson, 6 Hill, 540, affirmed 2 N. Y. 185, where there has not been a compliance with the terms of the contract, "the objection cannot be got over." That was a case in which a guaranty was given by the defendant to pay for goods supplied to a third party. They were to be paid for on January 1, 1840. The seller took the purchaser's note payable December 25, 1839, and the court held that the defendant was not bound by the guaranty, although the plaintiff did not require payment until after the 1st of January, 1840.

In Page v. Krekey, 137 N. Y. 307, 33 N. E. 311, 21 L. R. A. 409, 33 Am. St. Rep. 731, the court says that, where the obligation of the principal is different from that under which the surety became bound, the surety is released, and "this question seems to have been disposed of in the court below on the ground that the change was not material. But the answer to that is that the defendant's obligation is strictissimi juris, and he is discharged by any alteration of the contract to which his guaranty applied, whether material or not, and the courts will not inquire whether it is or is not to his injury" —citing Paine v. Jones, 76 N. Y. 278; Grant v. Smith, 46 N. Y. 98; National M. Bank v. Conkling, 90 N. Y. 116, 43 Am. Rep. 146; Bangs v. Strong, 7 Hill, 250, 42 Am. Dec. 64; Henderson v. Marvin, 31 Barb. 297.

In Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669, the court says that when the terms of the contract of guaranty have been changed, and the contract as finally made is not the one upon which the surety agreed to become bound, he will be released. Here, by the statement of the vice president of the bank who conducted the transaction for

the plaintiff, it is admitted that a new contract was made—one that did not put Newman in possession of $5,000, but only of $3,500. They might as well have agreed to retain $4,000 as $1,500. It is not, a case of a departure in the performance of a contract from a requirement thereof, in which case, in order to defeat an action upon the surety bond, it would be necessary for the defendant to show that he had suffered some detriment; but it is a clear case of the substitution of another contract, viz., for a conditional loan of money for that absolute loan to protect which the bond was given.

I am of the opinion that the judgment should be reversed, and a new trial ordered.